UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHIRES,

    Plaintiff,

v.                                                                                   Case No. 06-14971
                                                                              Hon. Sean F. Cox

CUMULUS BROADCASTING, LLC, et al.,

    Defendants.
_____

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for summary judgment. Both parties have briefed the issues and a hearing was held January 10, 2008. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment. Summary judgment is granted on Plaintiff's breach of contract claims stemming from an alleged oral agreement or a legitimate expectation of just-cause employment; and Plaintiff's claims for fraud. Summary judgment is denied on Plaintiff's claim for breach of an express contract.

## I. BACKGROUND

This action arises out of the termination of Plaintiff's employment. Plaintiff, Michael Chires, was employed with Defendants as a market manager for the Flint radio station cluster. Market managers are responsible for programming, promotions, general administration, human resources, managing and overseeing sales activities and customer relations.

In December 2004, Plaintiff voluntarily resigned from Greater Media Broadcasting

1

Company. In February 2005, Larry Blum ("Blum"), the regional director for the Flint, Michigan radio cluster, contacted Plaintiff to recruit him as the market manager for Defendants' Flint cluster. Plaintiff was not immediately interested. In March 2005, Plaintiff claims he asked Blum very specific questions regarding the status of the Flint cluster, including questions about market performance and revenue. According to Plaintiff, Blum responded that "performance was good, that they were on budget, and that he felt that the goals that were in place were very obtainable." Plaintiff alleges that in reliance on Blum's response, he accepted a position with Defendants as a market manager.

Plaintiff and Defendants began to negotiate an employment contract. Defendants' attorney, Mona Maerz ("Maerz"), drafted the contract using a job description sent by Blum. Plaintiff started working for Defendants before a contract was agreed upon. The contract drafted by Maerz contained an employment term from May 2, 2005 to December 31, 2006. The contract also stated that termination was only for just cause. Apparently a subsequent draft of the contract contained a clause providing that Plaintiff's position as market manager was to be his sole employment. Plaintiff asserts that he and Blum agreed to strike that provision so he could work in his family's restaurant business. Plaintiff submitted the contract with the sole employment provision struck. Allegedly, despite Blum's acceptance, Maerz sent another draft of the contract containing another sole employment provision for Plaintiff's consideration. Maerz also emailed Blum and Jon Pinch ("Pinch"), the Chief Operating Officer for Defendants, to inform them that Plaintiff did not agree to her changes to the sole employment provision. Her correspondence included a copy of an email from Plaintiff stating that he and Blum agreed to strike the sole employment provision. Plaintiff again returned a copy of the contract to Blum

with the sole employment provision struck. Blum, for the second time, accepted the contract with the sole employment provision struck and forwarded it to Maerz. Plaintiff did not hear back regarding the contract. He asked Blum for a copy but never received one.

Plaintiff's employment with Defendants was terminated on November 30, 2005. Defendants cited "poor performance of your job duties." The employment contract Plaintiff asserts was in effect contained a six month non-compete clause. The contract further provided that Defendants would continue to pay Plaintiff his base salary during those six months if Plaintiff was not terminated for cause. Plaintiff argues he was not terminated for cause, and thus should have received payment under his employment contract.

On October 10, 2006, Plaintiff filed an action in Genesee County Circuit Court. Defendants removed the action on November 3, 2006. An Amended Complaint was filed on October 5, 2007, alleging: (1) breach of contract; (2) fraud; and (3) silent fraud. Defendants filed the instant Motion for summary judgment on October 2, 2007.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d

171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III. ANALYSIS

### A. Breach of Contract

Defendants argue they are entitled to summary judgment on two grounds: (1) Plaintiff did not enter into a for-cause employment contract with Defendants; and (2) even if Plaintiff did have a for-cause employment contract, his termination was justified. Plaintiff asserts there was a for-cause employment agreement based on three theories: (1) that Blum's acceptance of two contracts with the sole employment provision struck constituted an assent to the modification; (2) there was an oral agreement with respect to Plaintiff's salary, term of employment and ability to continue working in his family's restaurants; and/or (3) Plaintiff had a legitimate expectation of for-cause employment.

#### 1. Did Blum's acceptance constitute an assent by Defendants?

The parties dispute whether an express contract was formed because Plaintiff did not accept the offered employment contract as written. Plaintiff struck the sole employment provision. Defendants allege that this action served as a rejection of the employment contract, and thus, Plaintiff's employment was at-will. Plaintiff argues that through Blum's agreement on striking the sole employment provision and acceptance of two contracts with the provision struck, Defendants assented to the contract.

The essential elements of a valid contract are: (1) parties competent to contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of

4

obligation. *Hess v. Cannon Township*, 265 Mich.App. 582, 592 (Mich.App. 2005). The issue here is mutuality of agreement. "A basic requirement of contract formation is that the parties mutually assent to be bound." *Rood v. General Dynamics Corporation*, 444 Mich. 107, 118 (1993). "In order that there be a meeting of the minds...the acceptance of the offer must be substantially as made." *Harper Building Company v. Kaplan*, 332 Mich. 651, 656 (1952). "[A] proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." *Id.* "In deciding whether a party has assented to a contract, we follow the objective theory of assent, focusing on how a reasonable person in the position of the promisee would have interpreted the promisor's statements or conduct." *Rood*, 444 Mich. at 119.

Plaintiff's act of striking the sole employment provision from the offered employment contract served as a rejection of the offer. Nonetheless, Plaintiff argues that Blum's agreement on the striking of that provision and his acceptance of the contract eliminating that provision demonstrated an assent to the modification sufficient to create a binding contract with Defendants. Defendants deny this, arguing that Blum did not have the authority to make such a modification and that Pinch needed to sign off on all agreements with market managers.

"The authority of an agent to bind a principal may be either actual or apparent." *Alar v. Mercy Memorial Hospital, et al.*, 208 Mich.App. 518, 528 (Mich.App. 1995). "Actual authority may be either express or implied." *Id.* Express authority is authority the principal actually intended the agent to possess. *Hertz Corporation v. Volvo Truck Corporation*, 210 Mich.App. 243, 246 (Mich.App. 1995). "Implied authority is the authority that an agent believes the agent

5

possesses." *Id.* "Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency relationship exists...[h]owever, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent." *Id.* "Any question relating to the existence and scope of an agency relationship is a question of fact." *Hertz Corporation,* 210 Mich.App. at 246.

Plaintiff argues that Blum had actual authority to cut the best deal possible. Plaintiff relies on Pinch's testimony that he told Blum to "cut the best deal that you can." [Response, p.9, n.2]. However, the full exchange was:

> Q. What I want to focus on is, I guess, it sounds like in the negotiations you had basically or were allowing Larry Blum to handle that or that was your arrangement with him that he would handle it?
> [Objection omitted].
>
> A. The negotiations would have had limits. Larry would have said how much can we pay him, he wants X, I want - I think we should pay him Y and I would say, here's the parameters, and cut the best deal that you can and Larry would have checked back with me if there was any deviation to that - to those numbers.

[Response, Pinch Dep., pp.19-20]. Pinch did not testify that Blum had unbridled discretion. Rather, according to the testimony cited by Plaintiff, Blum was given authority to "cut the best deal" possible in terms of salary within the parameters given to him by Pinch. Regardless of Blum's authority to negotiate, Blum,[1] Pinch[2] and Maerz[3] testified that Pinch had to sign off on the hiring of market managers. Plaintiff does not offer any evidence to the contrary. Plaintiff fails to direct the court to evidence that Blum himself had actual authority to enter into a binding

---

[1] [Response, Blum Dep., pp.29-30; 55-56].

[2] [Response, Punch Dep., p.19].

[3] [Response, Maerz Dep., pp.49-50].

6

agreement on behalf of Defendants.

Plaintiff also asserts in a footnote that "[t]here is no dispute in this matter that Blum is the agent within Defendants' organization with apparent authority to negotiate the contract....[a]nd an agent with apparent authority to enter a contract can bind his or her principal to such contract." [citation omitted]. [Response, p.9, n.2]. At the hearing, Plaintiff identified several representations he claims raise an issue of fact regarding whether Blum had apparent authority. Plaintiff asserts that: (1) Blum was involved in all of the negotiating and Pinch was not; (2) Blum's name was put on the contract, not Pinch's;[4] (3) corporate counsel copied Blum on correspondence but not Pinch; and (4) Defendants failed to correct Plaintiff's belief that Blum agreed to strike the sole employment provision.

The first three allegations by Plaintiff are not sufficient to raise a genuine issue of material fact regarding whether Blum had apparent authority. Plaintiff admits that Pinch delegated negotiation of Plaintiff's contract to Blum. Therefore, no inference can reasonably be drawn from the fact that primarily Blum was involved in the negotiation of the contract and the related correspondence. The fourth assertion is that Plaintiff represented to Maerz in correspondence, and Maerz sent a copy of that correspondence to Pinch, that Blum agreed to strike the sole employment provision. Plaintiff also testified that Blum agreed to strike the sole employment provision and accepted the contract twice with that provision struck. Defendants did not correct Plaintiff's belief that Blum could agree to strike the provision by stating that Blum did not have the authority. Defendants also did not indicate to Plaintiff that the second

---

[4]It should be noted that Blum's name is listed as the person any notices required to be given under the contract should be directed to - it does not list Blum on the signature line of the contract.

7

contract he submitted, with the sole employment provision struck, was not acceptable to them. Because Defendants allowed Plaintiff to believe Blum could agree to strike the sole employment provision, and did not inform Plaintiff that he did not have an enforceable contract, Plaintiff creates a genuine issue of fact regarding whether Blum had apparent authority to assent to the modification, i.e. strike the sole employment provision.

### 2. Was there an oral agreement for for-cause employment?

Plaintiff contends the parties reached an oral agreement with respect to Plaintiff's salary and term of employment. "Employment contracts for a definite duration are presumptively terminable only for just cause." *Rood*, 444 Mich. at 117 (citation omitted). However, Defendants argue that if an oral agreement did exist, it is not enforceable based on the statute of frauds. Plaintiff asserts the statute of frauds does not apply, and to the extent that it does, there is an exception in this case based on estoppel.

Assuming Blum was able to bind Defendants to an oral agreement, that agreement falls within the Michigan statute of frauds. M.C.L. § 566.132. According to Plaintiff, "all parties agreed on Chire's salary and term of employment." [Response, p.9]. Plaintiff presumably refers to the term of employment contained in the written contract, May 2, 2005 through December 31, 2006. [Response, Exhibit G, ¶7]. In *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 612 n.24 (1980), the Michigan Supreme Court stated:

> There is indeed a practical difference between definite and indefinite hirings. A contract for a definite term has been generally regarded to be within the section of the statute of frauds concerning an 'agreement that, by its terms, is not to be performed within 1 year from the making thereof,' M.C.L. § 556.132; . . . while an agreement for an indefinite term is generally regarded as not being within the proscription of the statute of frauds.

The oral contract alleged by Plaintiff is for a definite term of more than one year, thus, it falls

within the statute of frauds. The case relied on by Plaintiff, *Rowe, supra*, is inapplicable because it concerns an indefinite term of employment.

Nonetheless, Plaintiff argues the statute of frauds should not apply to bar his breach of an oral contract claim because the estoppel exception applies. "Under certain circumstances, where it would be inequitable to apply the statute of frauds, a party may be estopped from pleading the statute of frauds as a defense." *Lovely v. Dierkes*, 132 Mich.App. 485, 489 (Mich.App. 1984). The elements of promissory estoppel are: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Id.* (citation omitted). In *Lovely*, the court first affirmed that the statute of frauds applied where there was an employment agreement for a duration of three years. Then, the court found that the plaintiff had sufficiently alleged the elements of promissory estoppel where he alleged "relinquishment of two other jobs and relocation of his family, the promise of a definite salary for a definite time, plus a percentage ownership in defendant corporation and the representation by defendants that the contract would be reduced to writing." *Id.* at 490-491. The court noted that termination of his employment with the defendant was insufficient to bar application of the statute of frauds, "[s]ome additional reliance is necessary." *Id.* at 490.

In this case, Defendants assert Plaintiff fails to establish reliance. Plaintiff does not identify what "promise" Plaintiff relied on and how such reliance was to his detriment. "Detrimental reliance is an essential element of estoppel." *Hammond v. Auditor General*, 70 Mich.App. 149, 151 (Mich.App. 1976). Plaintiff cites authority purported to hold "where a

9

plaintiff alleges estoppel to circumvent the statute of frauds, a question of fact is raised which **must be resolved at trial by the trier of fact**." [Response, p.13 (emphasis original)(citing *Powers v. Peoples Community Hospital Authority*, 437 Mich. 910, 913 (1991)). However, the "authority" cited by Plaintiff is a dissent to a denial of leave, and is thus not binding. *Powers, supra*. Further, the quote in *Powers* was taken from *Conel Development, Inc. v. River Rouge Savings Bank*, 84 Mich.App. 415, 423 (Mich.App. 1978), which in the next sentence stated that the issue was whether there was sufficient *evidence* to support a finding of estoppel. Likewise, in this case, Plaintiff cannot withstand summary judgment merely by stating that estoppel applies. It is incumbent on Plaintiff to offer evidence to support the claim.

The only thing Blum appears to have promised Plaintiff is his salary and term of employment - he did not promise that Plaintiff would receive a bonus. Plaintiff does not offer any evidence that he relied on Defendants' promises regarding his salary and term of employment. In his affidavit, Plaintiff avers that he relied on "Mr. Blum's positive assessment of the Flint stations and the misimpression [sic] that was created by his omission of critical information about the past and expected future performance of the Flint cluster." [Chires Affidavit, ¶9]. Plaintiff does not allege he relied on any promises regarding his salary or term of employment in accepting the position with Defendants. Plaintiff also does not offer any evidence that any such reliance was to his detriment.

Accordingly, Plaintiff fails to establish that the estoppel exception to the statute of frauds should apply. Defendants are entitled to summary judgment on Plaintiff's claim for breach of an oral agreement.

### 3. Did Plaintiff have a legitimate expectation of just-cause employment?

An employer's policies and procedures can instill a legitimate expectation of just-cause employment. *Toussaint*, 408 Mich. 579. "Only policies and procedures reasonably related to employee termination are capable of instilling such expectations." *Rood*, 444 Mich. at 139. There is a two-step analysis for evaluating legitimate expectation claims. "The first step is to decide 'what, if anything, the employer has promised,' and the second requires a determination of whether that promise is 'reasonably capable of instilling a legitimate expectation of just-cause employment.'" *Lytle v. Malady*, 458 Mich. 153, 164-165 (1998)(citation omitted). A legitimate expectation claim may only rest on "the employer's promises to the work force in general - for example, promises contained in a company handbook - rather than on promises made to an individual employee." *Novak v. Nationwide Mutual Ins. Co.*, 235 Mich.App. 675, 682-683 (Mich.App. 1999).

Plaintiff's legitimate expectation claim is untenable. First, it is unclear what promise Plaintiff relies on that was made to the entire work force in general. While Plaintiff does point out that Defendants always insist on having an employment agreement in place with market managers, it is not clear that the agreements are always for just-cause employment. Further, even if Defendants' alleged policy of entering employment agreements with its market managers was sufficient to constitute a "promise" for purposes of a legitimate expectation claim, Defendants fulfilled their promise when they offered Plaintiff an employment agreement. It is not the case that Defendants disregarded the policy and failed to offer Plaintiff an employment agreement. Rather, Plaintiff did not like the terms of the employment agreement offered and sought a modification eliminating the sole employment provision because he held an interest in a family business. This case involves issues individual to Plaintiff, and not the workforce in

general. Thus, Defendants are entitled to summary judgment on Plaintiff's legitimate expectation claim.

### B. Fraud and Silent Fraud

The elements of fraud are: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M&D, Inc. v. W.B. McConkey*, 231 Mich.App. 22, 27 (Mich.App. 1998). "A silent fraud claim differs from a traditional fraud claim in that the false representation needed to establish the first three elements of fraud may be shown by the defendant's failure to divulge a fact that the defendant had an affirmative duty to disclose." *Hord v. Environmental Research Institute of Michigan*, 228 Mich.App. 638, 646-647 (Mich.App. 1998)(*dissent*). Defendants do not address the first four elements. Defendants contend Plaintiff cannot establish the fifth and sixth elements - that Plaintiff relied on the alleged fraud and suffered an injury as a result.

As an initial matter, Plaintiff argues in his Response that he relied on Larry Blum's statements in choosing to work for Defendants and that "Defendants have *no* evidence that this was not the case." [Response, p.18 (emphasis original)]. It is well-settled that Defendants are not required to produce any evidence to disprove Plaintiff's claims. Rather, for purposes of this summary judgment motion, Plaintiff has the burden to produce evidence that establishes a genuine issue of material fact. *Copeland, supra*.

Plaintiff alleges that Defendants are liable for fraud and silent fraud based on Blum's

allegedly misleading and fraudulent statements regarding the financial status of the Flint cluster. According to Plaintiff, during a conversation prior to Plaintiff beginning employment with Defendants, he asked Blum specific questions about the performance of the Flint cluster. Plaintiff claims that Blum stated "the stations were performing well, that they were on budget, and that he felt that revenue goals in place were very obtainable." [Chires Affidavit, ¶¶3-4]. Plaintiff later found out that those statements were false and that the station was not performing well and was not likely to reach the revenue goal. Plaintiff avers that he relied on Blum's positive assessment of the Flint cluster's performance, and would not have taken the position with Defendants if he had received the accurate information. [Chires Affidavit, ¶¶9-10].

According to Plaintiff, his reliance on Blum's allegedly fraudulent statements led him to accept the position as market manager for the Flint cluster. The issue is, does Plaintiff establish that he suffered injury due to his reliance on Blum's allegedly fraudulent representations? See *Hord v. Environmental Research Institute*, 463 Mich. 399, 404 (2000)(to sustain a claim of fraud, the plaintiff must establish that he "suffered injury due to his reliance" on a misrepresentation). Plaintiff alleges several injuries: (1) "the psychic injury of committing to an unscrupulous employer;" (2) negotiating his pay with the belief that the bonus was attainable; (3) the "lost opportunity to pursue more lucrative employment or enriching education by taking the job with Defendants" and (4) "loss of reputation from his termination." [Response, p.18-19].

"[I]n a tort action, the tort-feasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated." *Ensink v. Mecosta County*

13

*General Hospital*, 262 Mich.App. 518, 524 (Mich.App. 2004). However, "[r]ecovery is not permitted in a tort action for remote, contingent, or speculative damages." *Id.* "A party asserting a claim has the burden of proving damages with reasonable certainty." *Id.* at 525.

Plaintiff does not offer any evidence that he suffered a "psychic injury" because he accepted employment with an "unscrupulous employer." There is no testimony or other evidence regarding any mental distress. Further, Plaintiff does not offer any authority for the proposition that merely being deceived is sufficient to constitute an injury for purposes of establishing a fraud claim.

Plaintiff also alleges he was injured because he was unaware when negotiating his salary that he would not be able to attain the bonuses. However, Plaintiff does not allege that he would have attempted to negotiate a higher salary in lieu of the bonuses if he had known the true financial status of the Flint cluster. In his affidavit, Plaintiff avers "I would not have taken the position with Defendants had Mr. Blum provided a complete and accurate picture of the stations' true performance." [Chires Affidavit, ¶10]. Moreover, Plaintiff does not offer any evidence that he may have received a higher salary had he attempted to negotiate one. Pinch testified that Blum was given parameters for Plaintiff's salary, but there is no evidence what those parameters were. Accordingly, Plaintiff was not damaged by his reliance on Blum's representations because either way he would not have obtained the bonus. According to Plaintiff, he would not have taken the job if he had known the true financial situation of the cluster.

In addition, Plaintiff alleges that he "lost the opportunity to pursue more lucrative employment or enriching education by taking the job with Defendants." [Response, p.18]. Plaintiff also claims he turned down the opportunity to take over his family business in favor of

14

employment with Defendant.  However, in his deposition, Plaintiff testified that he learned of the opportunity with his family business in "fall of '05." [Response, Chires Dep., p.92].  Plaintiff began his employment with Defendants in May of 2005.  Further, Plaintiff also testified that he did not want the job, and that it was "moderately" still open to him when he was terminated by Defendants. [Response, Chires Dep., pp.91-92].  In addition, Plaintiff testified:

> Q. Greater Media.  Between the time you left Greater Media and the time you began at Cumulus, did you undertake any actions to pursue the potential purchase of Mesquite Creek restaurant?
> A. No.
> Q. I think in your redirect you mentioned that between the time you left your prior employer and the time you started with Cumulus, you were thinking about returning to school, is that correct?
> A. No, I was referring to after I left Cumulus.  When I left Cumulus, I was looking at options in terms - maybe I misunderstood, but I was looking at options in terms of what to do.  I wasn't sure at that point if I wanted to go back into the broadcast industry * * * so I was thinking of different things and considering maybe going back to school and getting my Master's or just doing something different.  So that's what I meant, was after Cumulus, not in between Greater Media and Cumulus.
> Q. Okay.  And the same question with regards to you mentioned potentially pursuing becoming a stockbroker that's something you considered after leaving Cumulus?
> A. Yeah, all of that.

[Response, Chires Dep., pp.115-116].  On further examination Plaintiff testified:

> Q. Between the time that you left Greater Media and the time that you began at Cumulus, did any specific business opportunity present itself to you? [Objection omitted].
> A. Any specific broadcast opportunity?  The answer is no.  Did I pursue opportunities outside of broadcast that never became realized?  Yes.
> Q. What opportunities did you pursue that did not become realized?
> A. Just, again, looking at businesses to perhaps purchase, you know, whether it's - I don't remember all of the different ones at that time, I looked at several, but again, it was just businesses outside broadcast.
> Q. Was any business offered to you for purchase -
> A. No.
> * * *
> Q. Was there any specific, any single business that you were particularly

15

> looking at to purchase?
> A. No, because it was - you know, I can't remember exactly, but there was only roughly about a roughly four-month period between Greater Media and Cumulus, so nothing really got to that point before Cumulus pursued me.
> Q. So maybe some initial investigation, but that was about it?
> A. In general probably, yes.
> Q. And you certainly never got to the point of doing any sort of due diligence or business record review or anything like that on any potential purchase between the time you left Greater Media and the time that you started at Cumulus?
> A. Not that I remember.

[Response, Chires Dep., pp.115-121].

Plaintiff does not identify any specific opportunities that he passed up in favor of his employment with Defendants. He merely alleges he was generally looking at businesses. Thus, the general loss of opportunity to pursue other ventures is too speculative to support Plaintiff's fraud claims. Further, nothing prevented Plaintiff from continuing his search for business or educational opportunities - particularly in light of Plaintiff's testimony that he believed the sole employment provision was not a part of his employment agreement.

Lastly, Plaintiff claims he suffered a loss of reputation based on his termination. This injury is too remote from Plaintiff's reliance to support a fraud claim. Plaintiff alleges he relied on Blum's fraudulent statements regarding the financial status of the Flint cluster in taking the job with Defendants. But, the alleged loss of reputation stems not from taking the job, but from Plaintiff's alleged termination without just-cause. The injury arises from Plaintiff's termination, not from his reliance on Blum's statements.

Because Plaintiff fails to offer any evidence to establish injury with respect to his fraud claims, Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment. Summary judgment is granted on Plaintiff's breach of contract claims stemming from an alleged oral agreement or a legitimate expectation of just-cause employment; and Plaintiff's claims for fraud. Summary judgment is denied on Plaintiff's claim for breach of an express contract.

**IT IS SO ORDERED.**

          **S/Sean F. Cox**
          **Sean F. Cox**
          **United States District Judge**

**Dated: February 13, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on February 13, 2008, by electronic and/or ordinary mail.**

          **S/Jennifer Hernandez**
          **Case Manager**